## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**PHILLIP BIVENS,** *et al.*                                    **PLAINTIFFS**

**V.**                           **CIVIL ACTION NO. 2:13-CV-8-KS-MTP**

**FORREST COUNTY,** *et al.*                              **DEFENDANTS**

### Memorandum Opinion and Order

For the reasons provided below, the Court **grants in part and denies in part** the Motions to Dismiss [94, 97, 99, 102, 107, 119, 129, 147] filed by Defendants Terry Martin, Herbert Hart, Joe Hopstein, Henry "Red" Brown, Jim Erwin, the Estate of R. E. "Eddie" Clark, the Estate of Earnest "Arlon" Moulds, and the Estate of Larry James. The Court also **dismisses without prejudice** Plaintiffs' claims against Defendant Wayne R. Taylor in his individual capacity and **denies** his Motion to Dismiss [105] **as moot**. Finally, the Court **dismisses without prejudice** Plaintiffs' claims against Defendant Gene Walters in his individual capacity.

The parties shall, within one week of the entry of this order, contact the chambers of Magistrate Judge Mike Parker to schedule a case management conference.

### I. Background[1]

This is a civil rights suit. Plaintiffs Phillip Bivens, Bobby Ray Dixon, and Larry

---

[1]Pursuant to the standard of review under Rule 12(b)(6), the Court's factual summary was derived from the Plaintiff's Second Amended Complaint [61], Rule 7(a) Reply [165], and Supplement [178] to the Reply. It should not be construed as the Court's substantive findings of fact.

Ruffin[2] – three African-American men – allege that they were wrongfully arrested, convicted, and imprisoned for the rape and murder of a white woman. They allege that Defendants coerced their false confessions through violence and threats of violence, fabricated evidence, ignored potentially exculpatory evidence, and otherwise conspired to prosecute them without probable cause – all motivated by racial animus.

On May 4, 1979, E.P., a young white housewife in Forrest County, Mississippi, was raped and murdered in her home. Her 4-year-old son, L.P., witnessed the crime. Within days, the Forrest County Sheriff's Department ("FCSD") and Hattiesburg Police Department ("HPD") formed a task force to find the perpetrator. Defendant Gene Walters (Sheriff, FCSD) named Defendant Earnest "Arlon" Moulds (Chief Investigator, FCSD) the task force's head investigator. Defendants Joe Hopstein (Chief Criminal Deputy Sheriff, FCSD), Terry Martin (Sheriff's Deputy, FCSD), Henry "Red" Brown (Sheriff's Deputy, FCSD), R E. "Eddie" Clark (Sheriff's Deputy, FCSD), Herbert Hart (Sheriff's Deputy, FCSD; Chief Jailer, Forrest County Regional Jail), and Raymond Howell (Officer, HPD) were assigned to or assisted the task force.

Each officer's investigative activities were recorded in notes and submitted to Moulds, and officers assigned to or assisting the task force regularly met to discuss the investigation. Defendants initially knew that the victim's child stated a single, "bushy-haired" African-American man had committed the crime; that fingerprints, footprints,

---

[2]Plaintiffs Bivens, Dixon, and Ruffin are deceased, and their Estates are the named Plaintiffs in this suit. In the interest of brevity, the Court will refer to them Bivens, Dixon, and Ruffin.

tire prints, hair, and bodily fluids were left at the crime scene; and that the murder weapon and a bloody towel had likely been removed from the scene by the perpetrator. The victim's husband provided Defendants a list of men matching his son's description who knew the victim and/or her family. The list included Andrew Harris, the man whom DNA evidence eventually proved committed the crime.

Defendants focused their investigation on Ruffin despite exculpatory statements from his friends, family, and a bar owner who provided him an alibi. Defendants obtained false inculpatory statements from two residents of the Restitution Center where Ruffin lived. One of the informants was Defendant Clark's cousin, Andy DeFatta. Clark visited DeFatta at his mother's house and eventually brought him in to provide a statement implicating Ruffin. Defendants Clark, Hoptstein, Moulds, and Martin allegedly provided DeFatta with nonpublic facts about the crime, and Defendants Moulds and Martin signed DeFatta's statement as witnesses. DeFatta purportedly suggested that they speak with another Restitution Center resident, Cris Williams. Defendants Moulds, Hopstein, and Martin questioned Williams, and he eventually signed a statement implicating Ruffin, which Moulds signed as a witness.

After obtaining the false statements, Defendants Moulds and Howell arrested Ruffin and brought him in for questioning. Plaintiffs alleged that through the night of May 29, 1979, and into the morning of May 30, 1979, Defendants Hopstein, Hart, Brown, Clark, Martin, Howell, and Moulds coerced a false confession from Ruffin by beating him, threatening him, and depriving him of food and sleep. Defendants purportedly supplied Ruffin with factual details regarding the victim and her home.

3

On May 30, Defendant Walters publicly announced that the task force had arrested Ruffin for the rape/murder. Defendants Brown, Clark, Erwin, and Taylor continued to beat Ruffin and coerce additional statements from him for several nights after his initial false confession. Defendants Hopstein, Brown, and Howell allegedly bragged to Defendant Walters, in the presence of jail trustees, about beating Dixon. They warned the trustees to remain silent regarding what they had heard.

Defendants failed to investigate or corroborate some of the details discovered during their investigation and interrogation of Ruffin. For example, Defendants discovered that Ruffin did not own a pair of shoes that matched the footprints discovered at the crime scene; that his fingerprints did not match those found at the crime scene; that he did not own or have access to a car matching a description provided by witnesses; and that his hair was shorter than the attacker's, according to testimony by the victim's child. Regardless, they arrested him, charged him, and he was eventually indicted for the subject crime.

Defendants Moulds, Hopstein, Clark, Brown, Martin, Hart, and Howell continued to investigate, looking for potential accomplices – despite the witness's statement that there had been a single attacker. In September 1980, over fifteen months after arresting Ruffin, the task force arrested Dixon, a mentally handicapped African-American man, for missing a work detail from a prior conviction. Dixon had previously been arrested with Ruffin for minor theft. Dixon initially denied having been involved in the rape/murder, or knowing anything about it. But officers – including Brown, Hopstein, and Howell – interrogated, beat, and threatened him until

4

he provided a false confession of watching Ruffin rape and murder E.P., based on information officers provided him. He also falsely implicated Bivens. Officers – including Defendants Brown, Hopstein, and Howell – allegedly continued to beat Dixon repeatedly over the next several weeks, threatening to kill him if he did not plead guilty. He eventually pleaded guilty, and he received a sentence of life in prison in exchange for his testimony against Ruffin. Defendants Hopstein, Brown, and Howell allegedly bragged to Defendant Walters, in the presence of jail trustees, about beating Dixon. They warned the trustees to remain silent regarding what they had heard.

In October 1980 – over sixteen months after arresting Ruffin – Defendant Hart and others obtained an extradition order based on upon Dixon's false statement, arrested Bivens at his home in California, and escorted him back to Mississippi. During the flight, Hart interrogated Bivens. Once in Hattiesburg, Defendant Walters allegedly threatened Bivens while brandishing a knife, and officers interrogated and threatened him until he agreed to provide a false confession containing facts provided to him. Moulds and Hopstein videotaped the false confession.

In 2010 and 2011, Ruffin, Dixon, and Bivens were exonerated by DNA testing on semen recovered from the victim's body. The DNA matched Andrew Harris, an African-American man on the list of possible suspects provided to Defendants in 1979 by the victim's husband. Ruffin died in 2002, while still in prison. Dixon died in 2010, three months after he was released from prison on medical parole and five weeks before his exoneration. Bivens died in August 2014 [163], after this civil case had been filed. Ruffin, Dixon, and Bivens collectively spent eighty-three years in Parchman for

5

a crime which they did not commit.

Plaintiffs asserted a wide variety of claims under 42 U.S.C. §§ 1983 and 1985, and Plaintiff Ruffin's children – Laturas Smith and Carrie Strong – asserted their own Section 1983 claim. Plaintiffs named Forrest County, the City of Hattiesburg, and several individuals as Defendants. The individual Defendants filed Motions to Dismiss [94, 97, 99, 102, 105, 107, 119, 129, 147] pursuant to Rule 12(b)(6) and on the basis of qualified immunity. The Court ordered [156] Plaintiffs to file a Rule 7(a) Reply as contemplated by *Schultea v. Wood*, 47 F.3d 1427, 1430-32 (5th Cir. 1995) (en banc). Plaintiffs filed the Reply [165], Defendants filed supplemental Responses [167, 168, 169, 170, 171, 172, 173, 174, 175], and Plaintiffs supplemented [178] their Reply. Defendants' Motions to Dismiss are ripe for review.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010)

6

(punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

Additionally, "'[h]eightened pleading' is needed in qualified immunity cases. Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). Plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003). Phrased differently, a "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012). The plaintiff must "speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

### III. DISCUSSION

First, the Court will first provide a brief overview of Plaintiffs' claims. Second, it will set out generally applicable law pertinent to those claims and Defendants' qualified immunity defense. Finally, it will address each individual Defendant's motion to dismiss.

### A.   *Plaintiffs' Claims*

1.     *Count I – § 1983*

In Count I of the Second Amended Complaint [61], Plaintiff Ruffin alleges that Defendants, acting individually and in concert, forced him to incriminate himself, violating his Fifth and Fourteenth Amendment rights to be free from self-incrimination. He alleges that they beat him, threatened him, deprived him of food and sleep, and coerced him to provide a false confession.

2.     *Count II – § 1983*

In Count II, Plaintiff Ruffin alleges that Defendants, acting individually and in concert, deprived him of liberty without due process of law, violating the Fourteenth Amendment. He claims that Defendants fabricated evidence, threatened witnesses, and deliberately failed to conduct an adequate investigation. He alleges that Defendants provided him with facts about the murder that were not public knowledge and later represented to the prosecutor, jury, and court that those details originated with him. He also alleges that they coerced and/or fabricated inculpatory statements from Plaintiffs and others, concealed and ignored exculpatory evidence, utilized coercive interview tactics, and used improper identification procedures.

3.     *Count III – § 1983*

In Count III, Plaintiff Dixon alleges that Defendants, acting individually and in concert, forced him to incriminate himself, violating his Fifth and Fourteenth Amendment rights to be free from self-incrimination. He also alleges that Defendants deprived him of liberty without due process of law, violating the Fourteenth Amendment. He alleges that they beat him, threatened him, arrested him on a false

charge, coerced him to provide a false confession with details they provided him, and concealed or ignored exculpatory evidence – all while knowing he lacked the mental capacity to provide knowing and voluntary confession.

4.    *Count IV – § 1983*

In Count IV, Plaintiff Bivens alleges that Defendants, acting individually and in concert, forced him to incriminate himself, violating his Fifth and Fourteenth Amendment rights to be free from self-incrimination. He also alleges that Defendants deprived him of liberty without due process of law, violating the Fourteenth Amendment. He alleges that they threatened him, coerced him to provide a false confession with details they provided, and concealed or ignored exculpatory evidence.

5.    *Count V – § 1983*

In Count V, Plaintiff Ruffin alleges that Defendants violated his substantive due process rights under the Fourteenth Amendment. He alleges that they beat him, threatened him, coerced his false confession, fabricated evidence against him, and deliberately ignored potentially exculpatory evidence – all without any evidence connecting him to the underlying crime.

6.    *Count VI – § 1983*

In Count VI, Plaintiff Dixon alleges that Defendants violated his substantive due process rights under the Fourteenth Amendment. He alleges that they beat him, threatened him, coerced his false confession while knowing he lacked the mental capacity to provide a knowing and voluntary confession, fabricated evidence against him, and deliberately ignored potentially exculpatory evidence.

9

7.    *Count VII – § 1983*

In Count VII, Plaintiff Bivens alleges that Defendants violated his substantive due process rights under the Fourteenth Amendment. He alleges that they threatened him, coerced his false confession, fabricated evidence against him, and ignored potentially exculpatory evidence.

8.    *Count VIII – § 1983*

In Count VIII, Plaintiffs Bivens, Dixon, and Ruffin allege that Defendants violated their Fourth and Fourteenth Amendment rights of freedom from detention pursuant to the wrongful institution of legal process. They allege that Defendants arrested, detained, and prosecuted them without probable cause.

9.    *Count IX – § 1983*

In Count IX, Plaintiffs Bivens, Dixon, and Ruffin allege that Defendants deprived them of their First and Fourteenth Amendment rights of access to the courts and executive clemency by failing to come forward with the truth after Plaintiffs' conviction.

10.    *Count X – § 1983*

In Count X, Plaintiffs Bivens, Dixon, and Ruffin allege that each Defendant failed to intervene to prevent the other Defendants from violating their constitutional rights.

11.    *Count XI – § 1983*

In Count XI, Plaintiffs Bivens, Dixon, and Ruffin allege that the individual Defendants conspired to deprive them of their constitutional rights as provided above

and committed certain overt acts in furtherance of the conspiracy.

12.    *Count XII – § 1985(2), (3)*

In Count XII, Plaintiffs Bivens, Dixon, and Ruffin allege that the individual Defendants conspired to deprive them of their constitutional rights as provided above, committed certain overt acts in furtherance of the conspiracy, and were motivated by racial animus.

13.    *Count XIII – § 1983*

In Count XIII, Plaintiffs Bivens, Dixon, and Ruffin allege that Defendants Walters, Hopstein, Hart, and Moulds have supervisory liability for the actions of their subordinate officers in the Forrest County Sheriff's Department ("FCSD"). Plaintiffs also allege that Defendants Walters, Hopstein, Hart, and Moulds failed to adequately supervise, discipline, or train their subordinates.

14.    *Count XIV – § 1983*

In Count XIV, Plaintiffs Bivens, Dixon, and Ruffin allege that unidentified supervisors in the Hattisburg Police Department ("HPD") have supervisory liability for the actions of their subordinate officers. Plaintiffs also allege that the unidentified HPD supervisors failed to adequately supervise, discipline, or train their subordinates.

15.    *Count XV – § 1983*

In Count XV, Plaintiffs Smith and Strong allege that Defendants violated their First and Fourteenth Amendment rights of familial association by wrongfully arresting and prosecuting their father, Plaintiff Ruffin, and by failing to come forward with the truth after Plaintiff Ruffin's conviction and incarceration.

11

16.    *Count XVI – § 1983*

In Count XVI, all Plaintiffs allege that the individual Defendants' actions were committed pursuant to policies, practices, or customs of the City of Hattiesburg, Mississippi and Forrest County, Mississippi. Plaintiffs further allege that the City and County maintained policies, practices, or customs of failing to train, supervise, or discipline HPD and FCSD officers.

## B.    *Overview of Sections 1983, 1985*

Generally, Section 1983 provides a cause of action against any person who, under color of state law, deprives another person of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (punctuation omitted).

Section 1985(2) provides, in pertinent part:

[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). Generally, the section "prohibits conspiracies to obstruct justice in state and federal courts." *Ryland v. Shapiro*, 708 F.2d 967, 973 n. 7 (5th Cir. 1983). It requires an allegation "that the actions of the defendants are motivated by racial,

or perhaps otherwise class-based animus." *Id.* (punctuation omitted).

Section 1985(3) provides, in pertinent part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . [and] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purposes of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). The plaintiff must also allege "that the conspiracy was motivated by a class-based animus." *Id.* at 653.

## C.   *Qualified Immunity, Generally*

Plaintiffs asserted claims against the individual Defendants in both their official and individual capacities.

Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

13

*Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). Officials sued in their individual capacity may assert the defense of qualified immunity. *Id.* at 395.

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity claims unless existing precedent placed the statutory or constitutional question beyond debate.

*Id.* (punctuation and citations omitted). To overcome qualified immunity, a plaintiff must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (punctuation and citation omitted). The Court may address either element first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

## D.   *Collective Allegations*

Plaintiffs argue that they are not required to allege specific facts as to each individual Defendant. They contend, rather, that collective allegations as to all Defendants are sufficient to meet the heightened pleading requirement for Section 1983 actions against individual government officials who have asserted qualified immunity claims.

The Court need not repeat the pleading standard provided above. *See Backe*, 691 F.3d at 648; *Nunez*, 341 F.3d at 388; *Reyes*, 168 F.3d at 161. Plaintiff's argument on this point is without merit. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443-44 (5th Cir. 1999), cited by Plaintiffs in support of their "collective allegations" argument, specifically provides the "heightened pleading standard" for Section 1983

14

claims against individual government officials who have asserted a qualified immunity defense: "[P]laintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation." In *Anderson*, the plaintiff alleged "specifically enumerated decisions" by each individual defendant, and the Court held that he "pleaded with sufficient particularity facts establishing a causal connection between defendants' actions and decisions and the alleged constitutional violations." *Id.* at 444.

### E.   *Terry Martin [94]*

    *1.   Count I*

Defendant Martin argues that Plaintiffs did not provide enough specific factual allegations as to his involvement in the alleged deprivation of Ruffin's right to be free from self-incrimination under the Fifth Amendment.

"It is axiomatic that a criminal defendant's constitutional rights have been violated if his conviction is based, in whole or in part, on an involuntary confession, regardless of its truth or falsity." *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005) (citing U.S. CONST. amend. V). Plaintiffs specifically alleged that Martin participated in his interrogation, and that Martin helped beat and threaten a false confession from him. The allegations were not conclusory or speculative. Plaintiffs alleged specific actions by a specific person which are sufficient to state a claim against Martin which would defeat qualified immunity.

    *2.   Count II*

Martin argues that Plaintiffs did not provide enough specific factual allegations

as to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. In their Rule 7(a) reply [165], Plaintiffs alleged that Martin "directly participated in the fabrication of the false statement from Andy DeFatta implicating Larry Ruffin on May 29, 1979," and that he "directly participated in the fabrication of a second false statement implicating Mr. Ruffin taken from Cris Williams on May 30, 1979." They further alleged that Martin participated in the interrogation, beating, and threatening of Ruffin. Likewise, in the Second Amended Complaint [61], Plaintiffs alleged that Martin participated in the coercion of Ruffin's confession by beating him, threatening him, and depriving him of food and sleep.

"[A] state's manufacturing of evidence and knowing use of that evidence . . . to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the [Fourteenth Amendment] Due Process Clause . . . ." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). Likewise, "a defendant's due process rights may be violated when exculpatory or impeachment evidence, which is both favorable to the defendant material to guilt or punishment, is concealed by the government," *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000), and "[c]onvictions based on evidence obtained by methods that are so brutal and so offensive to human dignity that they shock the conscience violate the Due Process Clause." *Chavez v. Martinez*, 538 U.S. 760, 774, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003). "[T]he Fourteenth Amendment is grievously breached when an involuntary confession is obtained by state officers and introduced into evidence in a criminal prosecution which culminates in a conviction." *Blackburn v. Alabama*, 361 U.S. 199, 205, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960).

16

Plaintiffs specifically alleged that Martin participated in the fabrication of false statements by two individuals leading to Ruffin's arrest, and that Martin helped beat, threaten, and otherwise coerce a false confession from Ruffin. These allegations are not conclusory or speculative. They allege specific actions committed by a specific person. Defendant would apparently require Plaintiffs to provide a blow-by-blow account of the alleged interrogation, but he failed to cite any Fifth Circuit precedent imposing such an onerous pleading standard. Plaintiffs' allegations are sufficient to state a plausible claim against Defendant Martin for violation of Ruffin's Fourteenth Amendment Due Process rights and to overcome a qualified immunity defense.

3.    *Count III*

Martin also argues that Plaintiffs did not provide sufficient factual detail regarding the alleged deprivation of Dixon's right to due process under the Fourteenth Amendment, and right to be free from self-incrimination under the Fifth Amendment. He describes their allegations as "bare assertions, 'upon information and belief,' . . . without detail or context" which are not sufficient to meet the heightened pleading standard for qualified immunity cases. He notes that, in many paragraphs of the Rule 7(a) reply [165], Plaintiffs merely listed several individual Defendants and alleged that they all participated in the alleged constitutional violations.

"It is axiomatic that a criminal defendant's constitutional rights have been violated if his conviction is based, in whole or in part, on an involuntary confession, regardless of its truth or falsity." *Murray*, 405 F.3d at 285. Furthermore, "a state's manufacturing of evidence and knowing use of that evidence . . . to obtain a wrongful

conviction deprives a defendant of his long recognized right to a fair trial secured by the [Fourteenth Amendment] Due Process Clause . . . ." *Castellano*, 352 F.3d at 942. Finally, "a defendant's due process rights may be violated when exculpatory or impeachment evidence, which is both favorable to the defendant material to guilt or punishment, is concealed by the government," *Murphy*, 205 F.3d at 814, and "[c]onvictions based on evidence obtained by methods that are so brutal and so offensive to human dignity that they shock the conscience violate the Due Process Clause." *Chavez*, 538 U.S. at 774.

Plaintiffs alleged, upon information and belief, that Martin helped beat, threaten, and otherwise coerce a false confession from Dixon. The actions alleged are sufficient to implicate the Fifth and Fourteenth Amendments. However, Plaintiffs admitted in their Rule 7(a) Reply [165] that they do not know the identities of the specific officers involved in the interrogation. Plaintiffs' "factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation," *United States ex rel. Steury v. Cardinal Health Inc.*, 735 F.3d 202, 204 (5th Cir. 2013), but their allegations against Martin related to Count III are inherently speculative. Therefore, they are insufficient to pass Rule 12(b)(6) scrutiny, much less the heightened pleading standard applicable to qualified immunity cases.

### 4.   *Count IV*

Martin argues that Plaintiffs provided insufficient detail regarding the alleged deprivation of Bivens' right to due process under the Fourteenth Amendment, and right to be free from self-incrimination under the Fifth Amendment. He contends that

their allegations are speculative and argues that Plaintiffs merely listed several individual Defendants, without any supporting facts or details as to their individual participation.

Plaintiffs admitted that they do not know whether Martin was actually involved in the actions committed against Bivens. They alleged: "Mr. Bivens died in 2014; given the passage of over 30 years before Mr. Bivens was exonerated and interviewed about his experiences in the jail in 1980, when Mr. Bivens was asked, he could not remember the names of the police officers who questioned him, if he was ever even told them." Therefore, Plaintiffs' allegations against Martin related to Count IV are insufficient to pass Rule 12(b)(6) scrutiny, much less the heightened pleading standard applicable to qualified immunity cases. *See Steury*, 735 F.3d at 204. Plaintiffs' allegations against Martin related to Count IV are inherently speculative insofar as they admittedly have no factual support.

5.  *Count V*

Martin argues that Plaintiffs provided insufficient detail regarding the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. As noted above, Plaintiffs specifically alleged that Defendant Martin "directly participated in the fabrication of the false statement from Andy DeFatta implicating Larry Ruffin on May 29, 1979," and that he "directly participated in the fabrication of a second false statement implicating Mr. Ruffin taken from Cris Williams on May 30, 1979." They further alleged that Martin participated in the interrogation, beating, and threatening of Plaintiff Ruffin. Likewise, in the Second Amended Complaint [61], Plaintiffs alleged

19

that Martin participated in the coercion of Ruffin's confession by beating him, threatening him, and depriving him of food and sleep.

"[C]oercive questioning by a law enforcement officer may support a § 1983 substantive due process 'shocks the conscience' claim . . . ." *Edmonds v. Oktibbeha County*, 675 F.3d 911, 916 (5th Cir. 2012) (citing *Chavez*, 538 U.S. at 774). Ruffin specifically alleged that Martin helped beat, threaten, and otherwise coerce a false confession from him. These allegations are not conclusory or speculative. They allege specific actions committed by a specific person, and they are sufficient to state a plausible claim against Defendant Martin for violation of Ruffin's Fourteenth Amendment Substantive Due Process rights and to overcome a qualified immunity defense.

### 6.   Count VI

Martin argues that Plaintiffs provided insufficient detail regarding the alleged deprivation of Dixon's Fourteenth Amendment substantive due process rights. As noted above, Plaintiffs admitted that they do not know whether Martin was actually involved in the actions committed against Dixon. Therefore, Plaintiffs' allegations against Martin related to Count VI are insufficient to pass Rule 12(b)(6) scrutiny, much less the heightened pleading standard applicable to qualified immunity cases. *Steury*, 735 F.3d at 204.

### 7.   Count VII

Martin argues that Plaintiffs provided insufficient detail regarding the alleged deprivation of Bivens' Fourteenth Amendment substantive due process rights. As noted

20

above, Plaintiffs admitted that they do not know whether Martin was actually involved in the actions committed against Bivens. Therefore, Plaintiffs' allegations against Martin related to Count VII are insufficient to pass Rule 12(b)(6) scrutiny, much less the heightened pleading standard applicable to qualified immunity cases. *Steury*, 735 F.3d at 204.

### 8.    *Count VIII*

Martin argues that Plaintiffs provided insufficient detail regarding his alleged involvement in the deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. He contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

The Fourth and Fourteenth Amendment rights to which Plaintiffs refers are not simply the right to be free from false arrest or, phrased differently, detention without legal process. Rather, Plaintiffs claim that Defendants violated their Fourth and Fourteenth Amendment due process rights by detention accompanied "by *wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). "[C]laims of false arrest, false imprisonment, and malicious prosecution [can] implicate Fourteenth and Fourth Amendment rights when the individual complains of an arrest, detention, and prosecution without probable cause." *Castellano*, 352 F.3d at 946. The "pretrial events" of such a prosecution implicate the Fourth Amendment, *id.* at 959, and the Fourteenth Amendment proscribes "a state's manufacturing of evidence and knowing use of that evidence along with perjured

testimony to obtain a wrongful conviction . . . ." *Id.* at 942. These claims, as they "call the validity of the conviction into play," did not accrue "until the conviction [had] been set aside . . . ." *Id.* at 959 (citing *Heck v. Humphrey*, 512 U.S. 477, 484-87, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)).

Here, Plaintiffs alleged that Defendants detained Ruffin, Dixon, and Bivens so that they could beat, threaten, and otherwise coerce false confessions from them. As noted above, Plaintiffs specifically alleged that Martin participated in the detention and coercion of Ruffin, and that he participated in the fabrication of false statements by DeFatta and Williams. Accordingly, the Court finds that Plaintiffs stated plausible Fourth and Fourteenth Amendment claims for the wrongful institution of legal process that defeat qualified immunity against Martin as to Ruffin. However, Plaintiffs admitted that they do not know whether Martin participated in the detention and coercion of Bivens and Dixon. Therefore, Plaintiffs' allegations in Count VIII as it relates to Bivens and Dixon are insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

Defendants also argue that Plaintiffs' Fourth Amendment claims are time-barred. They contend that "false arrest" claims accrued when Plaintiffs were first arraigned and became held pursuant to legal process. *See Wallace*, 549 U.S. at 389-90. However, as noted above, Plaintiffs' Fourth Amendment claims are not for "false arrest," a detention without legal process. Therefore, this argument is inapplicable.

### 9. *Count IX*

Martin argues that Plaintiffs failed to allege sufficient facts to demonstrate that

he deprived them of their First Amendment right of access to the courts and Fourteenth Amendment right of access to the clemency process.

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances. The Constitution requires that inmates have a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Driggers v. Cruz*, 740 F.3d 333, 336-37 (5th Cir. 2014). However, the Constitution does not require "that an inmate must be able to discover grievances . . . or litigate effectively once in court." *Id.* at 337; *see also Lewis v. Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). It only requires that inmates be provided "tools . . . that [they] need in order to attack their sentences, directly or collaterally . . . . Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. In summary, the Constitution merely requires "the conferral of a capability – the capability of bringing contemplated challenges to sentences . . . before the courts." *Id.* at 356; *see also Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010). To make out such a claim, an inmate must demonstrate an "actual injury." *Driggers*, 740 F.3d at 337. He "must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded." *Id.* (citing *Lewis*, 518 U.S. at 353).

Plaintiffs claim that Defendants, including Martin, deprived them of their right of access to the courts by failing to come forward with the truth about their misconduct and the coerced false confessions, causing the denial of their post-conviction motions

23

and parole requests. Plaintiffs do not allege, though, that any Defendant prevented them from appealing their conviction, filing petitions for post-conviction relief, or otherwise accessing the courts. Rather, their complaint appears to be that their appeals and petitions would have been more likely to succeed if the individual Defendants had admitted their wrongdoing.

As noted above, the First Amendment only guarantees "the conferral of a capability – the capability of bringing contemplated challenges to sentences . . . before the courts." *Lewis*, 518 U.S. at 354; *see also Terry*, 609 F.3d at 761. Plaintiffs do not allege that Defendants prevented them from filing appeals or petitions. *Lewis*, 518 U.S. at 354. They do not allege that Defendants deprived them of writing and mailing materials, withheld court contact information, barred them from accessing a prison library, prevented them from consulting inmate legal assistance, or obstructed their receipt of court communications. *See Terry*, 609 F.3d at 762. In fact, they admit that they filed post-conviction motions which were addressed by a court. The First Amendment does not guarantee that inmates will be able to "litigate effectively once in court." *Driggers*, 740 F.3d at 337. The right encompasses no more than "the ability of an inmate to prepare and transmit a necessary legal document to the court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). As Plaintiffs failed to allege any facts indicating that Martin – or any other Defendant – deprived them of that ability, they failed to state a claim for violation of the First Amendment right of access to the courts.

As for the due process right of access to the clemency process, "[i]t is clear that some minimal due process safeguards . . . apply to clemency procedures. But these

requirements really are *minimal . . . .*" *Turner v. Epps*, 460 F. App'x 322, 331 (5th Cir. 2012) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288-89, 18 S. Ct. 1244, 140 L. Ed. 2d 387 (1998) (O'Connor, J., concurring) (plurality opinion)). "[P]ardon and commutation decisions are not traditionally the business of courts[,] and . . . they are subject to the ultimate discretion of the executive power." *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344 (5th Cir. 1999). Therefore, the Fourteenth Amendment is only implicated where an inmate is arbitrarily denied access to the clemency process, or the clemency decision itself is made arbitrarily. *Id.*; *see also Woodard*, 523 U.S. at 289.

Plaintiffs alleged no facts indicating that Martin – or any other Defendant – arbitrarily denied them access to the clemency process. In fact, Plaintiffs do not contend that they were barred from seeking clemency. They merely contend that Defendants' failure to admit their alleged wrongdoing rendered their clemency petitions less effective. Therefore, they did not state a violation of their due process right of access to the clemency process. *See Turner*, 460 F. App'x at 331.

10.    *Count X*

Martin argues that Plaintiffs failed to allege sufficient specific facts in support of their claim that he failed to intervene and prevent others from violating their Constitutional rights.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3)

25

chooses not to act." *Whitley*, 726 F.3d at 646. But "liability will not attach where an officer is not present at the scene of the constitutional violation." *Id.* "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer acquiesced in the alleged constitutional violation." *Id.* at 647 (punctuation omitted).

As discussed above, Plaintiff specifically alleged that Martin and other officers beat, threatened, and otherwise coerced a false confession from Ruffin. Plaintiff alleged that Martin was present and participated in the coercive interrogation. These allegations are sufficient to state a plausible claim that Martin and others violated Ruffin's constitutional rights, that Martin had an opportunity to intervene, but that he chose not to do so. *Id.* at 646. At the very least, they demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647. However, Plaintiffs admitted that they do not know whether Martin participated in or was present for the deprivation of Bivens and Dixon's constitutional rights. Therefore, Plaintiffs failed to state a bystander liability claim against Martin with respect to Bivens and Dixon.

### 11.   *Count XI*

Defendants argue that Plaintiff failed to plead enough facts to support a Section 1983 conspiracy claim. They contend that Plaintiffs failed to state what the individual Defendants did in furtherance of the alleged conspiracy.

"To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir.

2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). The plaintiff must provide "material facts," *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986), or "factual allegations from which a conspiracy to violate [his] rights can reasonably be inferred . . . ." *Lynch*, 810 F.2d at 1370. The "conspiracy claim need not have met a probability requirement at the pleading stage; plausibility simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Jabary*, 547 F. App'x at 610. The "facts, when placed in a context . . . must raise a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act . . . ." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

In the Court's opinion, Plaintiffs' pleadings are sufficient to state a plausible claim of conspiracy to violate the constitutional rights of Plaintiffs Ruffin, Dixon, and Bivens. The Court need not repeat the allegations provided above in the case's background. It is undisputed that Plaintiffs alleged deprivations of their constitutional rights. Plaintiffs also alleged the existence of a law enforcement task force. The members of the task force allegedly shared their notes and investigatory findings, met regularly to discuss the investigation, and worked together to investigate the subject

27

crime. Finally, Plaintiffs alleged that multiple individual Defendants worked together in perpetrating the alleged constitutional deprivations at issue in this case.

The Court must also consider the case's particular circumstances and setting. Plaintiffs allege a conspiracy among Mississippi law enforcement officers to coerce false confessions from three innocent black men for the rape and murder of a white woman. The Court need not provide a lesson in Mississippi history to emphasize the significance of these allegations.

Plaintiffs specifically alleged that Defendant James threatened to "just take [Ruffin] to the woods and kill him." Defendant Clark allegedly told Ruffin, "I don't like niggers anyway, I'll kill you." Defendant Hopstein allegedly threatened to kill Ruffin and claim that he tried to escape. During the task force's investigation, Ruffin's family allegedly received anonymous threatening phone calls. The NAACP organized a fund raiser at a local church to pay Ruffin's legal fees; an anonymous caller threatened to "bomb that church out where you niggers is," and the church's power was cut during the meeting. Ruffin's family's mobile home was destroyed by a fire, and officers allegedly refused to investigate. While brandishing a knife, Defendant Walters allegedly told Bivens: "You niggers come down here from California and think you can kill a white woman and get away with it. Something should be done to you." Finally, Plaintiffs alleged that Defendants used racial slurs throughout the coercive interrogations of each Plaintiff.

Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or

28

conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Martin's actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently pleaded a Section 1983 conspiracy claim.

### 12.   *Count XII*

Defendants also argue that Plaintiffs failed to allege sufficient facts to state a conspiracy claim under Section 1985. Plaintiffs asserted claims under 42 U.S.C. §§ 1985(2) and (3). "Section 1985(2) prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant v. Military Dep't*, 597 F.3d 678, 687 (5th Cir. 2010). "To state a claim under § 1985(3), [Plaintiffs] must allege that two or more persons conspired to directly, or indirectly, deprive him of the equal protection of the laws or equal privileges and immunities under the laws." *Green v. State Bar*, 27 F.3d 1083, 1089 (5th Cir. 1994).  "The conspiracy must be race-based to state a cause of action for violation of § 1985." *Rayborn v. Miss. State Bd. of Dental Examiners*, 776 F.2d 530, 532 (5th Cir. 1985). For the reasons provided in the Court's discussion of Plaintiffs' Section 1983 conspiracy claim, the Court finds that Plaintiffs pleaded sufficient facts to state conspiracy claims under Sections 1985(2) and 1985(3).

### 13.   *Count XV*

Defendants argue that they enjoy qualified immunity from the "familial association" claim asserted by Plaintiffs Smith and Strong. To overcome qualified

29

immunity, a plaintiff must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Goodman*, 571 F.3d at 395. Defendants contend that there was no "clearly established" constitutional right to "familial association" at the time of the events described in the pleadings.

"A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Trent v. Wade*, 776 F.3d 368, 2015 U.S. App. LEXIS 1462, at *29 (5th Cir. 2015); *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "[T]he term clearly established does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar, or that holds the very action in question unlawful." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256-57 (5th Cir. 2005). A right is clearly established "if in light of pre-existing law the unlawfulness [is] apparent." *Id.* at 257. "[T]he central concept is that of 'fair warning': the law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trent*, 2015 U.S. App. LEXIS 1462 at *30. The plaintiff does not have to cite "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).

Plaintiffs cited two cases in support of their argument that the right to "familial

association" was clearly established at the time of the subject events: *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972), and *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1997). The Court need not discuss these cases in detail – nor other Supreme Court cases addressing constitutional protections of the family unit's sanctity, such as *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). The Fifth Circuit has held: "[W]e have little trouble finding that a constitutional interest in familial association does, in fact, exist and was clearly established" in 1997. *Kipps v. Caillier*, 205 F.3d 203, 206 (5th Cir. 2000) (denying rehearing *en banc*). The Court noted that "'family relationships' are subject to constitutional protection," and "the parent-child relationship lies at the heart of protected familial associations." *Id.* In so holding, the Court cited cases predating the events giving rise to this suit. *Id.* at 205-06 (citing *Stanley*, 405 U.S. at 651; *Kovacs v. Cooper*, 336 U.S. 77, 95, 69 S. Ct. 448, 93 L. Ed. 513 (1949) (Frankfurter, J., concurring); *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 166 88 L. Ed. 645 (1944); *Tyson v. New York City Hous. Auth.*, 369 F. Supp. 513, 520 (S.D.N.Y. 1974)). Likewise, in 1981 the Fifth Circuit stated: "The constitutional right generally protecting the family has been recognized for nearly three score years by the Supreme Court." *Laurenzo v. MHSAA*, 662 F.2d 1117, 1119 (5th Cir. 1981). Therefore, the Court finds that the right to "familial association" was clearly established in 1979 and 1980.

Defendants also argue that Plaintiffs' familial association claim is time-barred. Defendants contend that the claim would have accrued when Smith and Strong became

"aware that [they had] suffered an injury or [had] sufficient information to know that [they had] been injured." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). Therefore, according to Defendant's argument, Smith and Strong's claims accrued when they were first prevented from seeing him, around May 29, 1979. Defendants further argue that the statute of limitations would have been tolled until they reached the age of majority in 2001, at the latest. Therefore, they argue that the statute of limitations expired in 2004.

In response, Plaintiffs argue that their familial association claim – like their claims for wrongful institution of legal process – "call[s] the validity of the conviction into play" and, therefore, accrued on the date Ruffin's conviction was set aside, citing *Castellano*, 352 F.3d at 959, and *Heck*, 512 U.S. at 484-87.

Neither side has adequately briefed the issue of when the family association claims accrued. Regardless, "the statute of limitations is an affirmative defense that places the burden of proof on the party pleading it." *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011). "Under federal pleading requirements, . . . a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations," but "a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Id.* at 240. The Second Amended Complaint does not "affirmatively demonstrate" when Smith and Strong's family association claim accrued. *Id.* Therefore, the Court presently rejects Defendants' statute of limitations argument.

32

*14.    Summary*

For these reasons, the Court grants in part and denies in part Defendant Terry Martin's Motion to Dismiss [94]. The Court grants the motion as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Plaintiffs Dixon and Bivens, Count IX, and Count X as it relates to Plaintiffs Dixon and Bivens. However, the Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Plaintiff Ruffin, Count X as it relates to Plaintiff Ruffin, Count XI, Count XII, and Count XV.

## C.    *Herbert Hart [97]*

*1.    Count I*

Defendant Hart argues that Plaintiffs alleged insufficient specific facts related to his involvement in the alleged deprivation of Ruffin's right to be free from self-incrimination under the Fifth Amendment. Plaintiffs specifically alleged that Defendant Hart participated in the coercion of Ruffin's false confession by moving him around the jail, "passing him from one set of abusive interrogators to the next, concealing his screams of pain, and seeking to disorient and terrify him."  They also alleged that Hart participated in the interrogation, beating, and threatening of Ruffin. These allegations are sufficient to state a claim for the alleged violation of Ruffin's Fifth Amendment rights. [3]

*2.    Count II*

---

[3] Each Defendant's arguments are identical, for the most part. Therefore, the Court will not repeat its discussion of the contours of the each specific constitutional right raised by Plaintiffs, unless merited by the allegations and arguments specific to each individual Defendant.

Defendant Hart argues that Plaintiffs failed to provide sufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. Plaintiffs specifically alleged that Hart participated in the coercion of Ruffin's false confession by moving him around the jail, "passing him from one set of abusive interrogators to the next, concealing his screams of pain, and seeking to disorient and terrify him."  They also alleged that Hart participated in the interrogation, beating, and threatening of Ruffin, and that he helped feed Ruffin facts to enhance his false confession. These allegations are sufficient to state a claim for the violation of Defendant Ruffin's Fourteenth Amendment due process rights.

     *3.*    *Count III*

Hart also argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Dixon's right to due process under the Fourteenth Amendment, and right to be free from self-incrimination under the Fifth Amendment. In their Rule 7(a) Reply [165], Plaintiffs admitted that they do not know the specific officers involved in the actions committed against Dixon. Therefore, their allegation, "upon information and belief," that Hart was involved is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

     *4.*    *Count IV*

Hart argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to due process under the Fourteenth Amendment and right to be free from self-incrimination under the Fifth Amendment. Plaintiffs specifically alleged that Defendant Hart was among the officers who flew to California on a private

plane to arrest Bivens. Plaintiffs also alleged that Hart participated in the coercive, threatening interrogations of Bivens during the flight back to Mississippi. These allegations are sufficient to state a claim for the violation of Bivens' Fourteenth and Fifth Amendment rights.

     *5.*     *Count V*

Hart argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. Plaintiffs specifically alleged that Hart participated in the coercion of Ruffin's false confession by moving him around the jail, "passing him from one set of abusive interrogators to the next, concealing his screams of pain, and seeking to disorient and terrify him." They also alleged that Hart participated in interrogating, beating, and threatening Ruffin, and that he helped feed Ruffin facts to enhance the false confession. These allegations are sufficient to state a claim for the alleged violation of Ruffin's Fourteenth Amendment substantive due process rights.

     *6.*     *Count VI*

Hart also argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Dixon's right to substantive due process under the Fourteenth Amendment. As previously noted, Plaintiffs admitted that they do not know the specific officers involved in the actions committed against Dixon. Therefore, their allegation, "upon information and belief," that Hart helped coerce Dixon's false confession is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

7.    *Count VII*

Hart argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to substantive due process under the Fourteenth Amendment. Plaintiffs specifically alleged that Defendant Hart was among the officers who flew to California on a private plane to arrest Bivens. Plaintiffs also alleged that Hart participated in the coercive, threatening interrogations of Bivens during the flight back to Mississippi. These allegations are sufficient to state a claim for the violation of Bivens' Fourteenth Amendment substantive due process rights.

8.    *Count VIII*

Hart argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon. As noted above, Plaintiffs specifically alleged that Defendant Hart participated in the coercion of Ruffin's false confession by moving him around the jail, "passing him from one set of abusive interrogators to the next, concealing his screams of pain, and seeking to disorient and terrify him." They also alleged that Hart interrogated, beat, and threatened Ruffin, and that he helped feed Ruffin facts to enhance his false confession. Finally, they alleged that Hart was among the officers who flew to California on a private plane to arrest Bivens, and that he participated in the coercive, threatening interrogations of Bivens during the flight back to Mississippi. These allegations are sufficient to state

36

a plausible claim for the wrongful institution of legal process. The Court also rejects Defendant Hart's argument that this claim is time-barred, for the same reasons provided above.

However, Plaintiffs admitted that they do not know the specific officers involved in the coercion of Dixon's false confession. Therefore, their allegation that Hart participated in those actions is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

### 9. Count IX

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

### 10. Count X

Defendant Hart argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged Hart's presence and participation in the coercive interrogations of Ruffin and Bivens, in addition to his role in arresting Bivens in California. This is sufficient to state a plausible claim that Hart and other officers violated Bivens and Ruffin's constitutional rights, that Hart had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that Hart "acquiesced in the alleged constitutional violation." *Id.* at 647.

However, Plaintiffs admitted that they do not know the specific officers involved in the coercion of Dixon's false confession, and they have not pled any facts placing

Hart at the scene of the alleged coercion. Therefore, their allegation that Hart failed to intervene with respect to Dixon is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

 *11. Count XI*

 Defendant Hart argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that Hart was a member of the task force and, therefore, participated in the planning and coordination of the investigation. Plaintiffs also alleged that Hart participated in and facilitated the coercive interrogations of Ruffin and Bivens.

 Plaintifs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights and actions committed in furtherance of that effort. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Defendant Hart's actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently stated a Section 1983 conspiracy claim as to Hart.

 *12. Count XII*

 Defendant Hart also argues that Plaintiffs failed to state a claim under Section 1985. For the reasons provided above, the Court finds that Plaintiffs pleaded sufficient facts to state conspiracy claims against Defendant Hart under Sections 1985(2) and

1985(3).

       *13.    Count XIII*

Hart argues that Plaintiffs failed to allege sufficient facts in support of their claim that he and the other supervisory Defendants failed to adequately supervise, train, or discipline their subordinate officers.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). "To establish § 1983 liability against supervisors, the plaintiff must show that: (1) the [supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.*

"[T]he misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor," and the deliberate indifference standard is a "stringent" one, requiring that "the supervisory actor disregarded a known consequence of his action." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169-70 (5th Cir. 2010). "To establish deliberate indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman*, 571 F.3d at 395. "Furthermore, for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform," and the "plaintiff must allege with specificity how a particular training program is defective."

39

*Id.*

Plaintiffs alleged no specific facts concerning Defendants' training programs. Therefore, they failed to "allege with specificity how a particular training program [was] defective" and failed to state a claim under Section 1983 for the supervisory Defendants' alleged failure to train their subordinates. *Id.* However, Plaintiffs alleged that Hart was the Chief Jailer of the Forrest County Jail Complex and, therefore, the direct supervisor of each guard, including Defendants Taylor and Erwin. Plaintiffs also alleged specific facts demonstrating that Hart facilitated and participated in the deprivation of their constitutional rights.

These allegations are sufficient to demonstrate that Hart failed to supervise his subordinates while they were engaged in such acts, that a causal connection exists between his failure to supervise and the alleged deprivations, and that his failure to supervise constituted deliberate indifference to Plaintiffs' constitutional rights. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (supervisory official liable under Section 1983 if he affirmatively participates in the constitutional deprivation).

### 14.   *Count XV*

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

### 15.   *Summary*

For these reasons, the Court grants in part and denies in part Defendant Hart's Motion to Dismiss [97]. The Court grants the motion as to Count III, Count VI, Count

40

VIII as it relates to Dixon, Count IX, Count X as it relates to Dixon, and Count XIII as it relates to Hart's alleged failure to train his subordinates. The Court denies the motion as to Count I, Count II, Count IV, Count V, Count VII, Count VIII as it relates to Ruffin and Bivens, Count X as it relates to Ruffin and Bivens, Count XI, Count XII, Count XIII as it relates to Hart's alleged failure to supervise his subordinates, and Count XV.

**D.    *Joe Hopstein [99]***

   *1.    Count I*

Defendant Hopstein argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that Hopstein participated in beating, threatening, and otherwise coercing a false confession from Ruffin. Plaintiffs specifically alleged that Hopstein threatened to kill Ruffin and claim that he tried to escape. They further alleged that Hopstein helped fabricate Ruffin's false confession and feed him nonpublic information to enhance it. These allegations are sufficient to state a plausible claim that Hopstein violated Ruffin's Fifth Amendment rights.

   *2.    Count II*

Defendant Hopstein argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. As already noted, Plaintiffs alleged that Hopstein participated in beating, threatening, and otherwise coercing a false confession from Ruffin. Plaintiffs specifically alleged that Hopstein threatened to kill Ruffin and claim that he tried to

escape. They further alleged that Hopstein helped fabricate Ruffin's false confession and feed him nonpublic information to enhance it. These allegations are sufficient to state a plausible claim that Hopstein violated Ruffin's Fourteenth Amendment due process rights.

3.    *Count III*

Defendant Hopstein argues that Plaintiffs provided insufficient factual detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged that Hopstein repeatedly beat Dixon and bragged about it to the other officers in the presence of trustees. This allegation is sufficient to state a claim for the deprivation of Dixon's Fifth and Fourteenth Amendment rights.

4.    *Count IV*

Defendant Hopstein also argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged that Hopstein helped take Bivens' false videotaped confession. That is sufficient to state a claim against Hopstein for the violation of Bivens' Fifth and Fourteenth Amendment rights.

5.    *Count V*

Hopstein argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. Plaintiffs specifically alleged that Hopstein helped obtain false

statements from Andy DeFatta and Cris Williams through suggestion and manipulation. They also alleged that Hopstein participated in beating, threatening, and otherwise coercing a false confession from Ruffin; that he helped fabricate Ruffin's false confession by providing him nonpublic information; that he falsely represented to prosecutors that the confession originated with Ruffin; and that he threatened to kill Ruffin and claim that he tried to escape. These allegations are sufficient to state a Section 1983 claim for the alleged violation of Ruffin's Fourteenth Amendment substantive due process rights.

6.   *Count VI*

Hopstein argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Dixon's right to substantive due process under the Fourteenth Amendment. As previously noted, Plaintiffs alleged that Hopstein repeatedly beat Dixon and bragged about it to the other officers in the presence of trustees. This allegation is sufficient to state a claim for the deprivation of Dixon's right to substantive due process under the Fourteenth Amendment.

7.   *Count VII*

Hopstein argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to substantive due process under the Fourteenth Amendment. As noted above, Plaintiffs alleged that Hopstein helped take Bivens' videotaped false confession. This is sufficient to state a claim for the deprivation of Bivens' Fourteenth Amendment substantive due process rights.

8.   *Count VIII*

Hopstein argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that Defendant Hopstein participated in the coercive interrogations and fabrication of evidence with respect to Ruffin, that he helped take the videotaped false confession of Bivens, and that he repeatedly beat Dixon. The Court rejects Defendant Hopstein's argument that these claims are time-barred, for the same reasons provided above. Therefore, Plaintiffs adequately pleaded a claim for the deprivation of their Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process.

9.    *Count IX*

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

10.    *Count X*

Hopstein argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged Hopstein's presence and participation in the coercive interrogation of Ruffin. Plaintiffs also alleged that Hopstein helped take Bivens' videotaped false confession,

44

and that Hopstein repeatedly beat Ruffin. These allegations are sufficient to state a plausible claim that Hopstein and other officers violated Plaintiffs' constitutional rights, that Hopstein had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647. Therefore, Plaintiffs sufficiently stated bystander liability claims against Hopstein.

      11.    *Count XI*

      Hopstein argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that Hopstein conducted the initial interview of L.P., that he was later assigned to the task force, and that he participated in the planning and coordination of the investigation. Hopstein allegedly participated in the coercive interrogations of Ruffin and helped fabricate his false confession using nonpublic information. Hopstein also allegedly helped take the videotaped false confession of Bivens and repeatedly beat Dixon.

      Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Defendant Hopstein's actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently pleaded a Section 1983 conspiracy claim.

12.     *Count XII*

Hopstein also argues that Plaintiffs failed to state a conspiracy claim under Section 1985. For the reasons provided above, the Court finds that Plaintiffs pleaded sufficient facts to state conspiracy claims against Defendant Hopstein under Sections 1985(2) and 1985(3).

13.     *Count XIII*

Hopstein argues that Plaintiffs failed to allege sufficient facts in support of their claim that he and the other supervisory Defendants failed to adequately supervise, train, or discipline their subordinate officers. As previously noted, Plaintiffs alleged no specific facts concerning Defendants' training programs. Therefore, they failed to "allege with specificity how a particular training program [was] defective" and failed to state a claim under Section 1983 for the supervisory Defendants' alleged failure to train their subordinates. *Goodman*, 571 F.3d at 395. However, Plaintiffs alleged that Hopstein was the direct supervisor of Defendants Martin, Brown, and Clark. Plaintiffs also alleged specific facts demonstrating that Hopstein participated in the deprivation of their constitutional rights. These allegations are sufficient to demonstrate that Hart failed to supervise his subordinates while they were engaged in such acts, that a causal connection exists between his failure to supervise and the alleged deprivations, and that his failure to supervise constituted deliberate indifference to Plaintiffs' constitutional rights. *Wernecke*, 591 F.3d at 401.

14.     *Count XV*

For the same reasons provided above, the Court finds that there was a clearly

established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

15.    *Summary*

For these reasons, the Court grants in part and denies in part Defendant Hopstein's Motion to Dismiss [99]. The Court grants the motion as to Count IX and Count XIII as it concerns Hopstein's alleged failure to train his subordinates. The Court denies the motion as to Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count X, Count XI, Count XII, Count XIII as it concerns Hopstein's alleged failure to supervise/discipline his subordinates, and Count XV.

**E.    *Henry "Red" Brown [102]***

1.    *Count I*

Defendant Brown argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that Brown helped beat, threaten, and otherwise coerce a false confession from Ruffin. Plaintiffs also alleged that Brown helped provide Ruffin with nonpublic facts to enhance the false confession, and that Brown continued to coerce false inculpatory statements from Ruffin after the initial confession. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination.

2.    *Count II*

Brown argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process

47

rights. As previously noted, Plaintiffs alleged that Brown helped beat, threaten, and otherwise coerce a false confession from Ruffin. Plaintiffs also alleged that Brown helped provide Ruffin with nonpublic facts to enhance the false confession, and that Brown continued to coerce false inculpatory statements from Ruffin after the initial confession. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment due process rights.

   3.   *Count III*

Brown argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment due process rights. Plaintiffs alleged that Brown repeatedly beat Dixon and coerced his false confession. They also alleged that he later bragged about it to Defendant Walters in the presence of trustees. These allegations are sufficient to state a claim for the deprivation of Dixon's Fifth and Fourteenth Amendment rights.

   4.   *Count IV*

Brown argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged, "upon information and belief," that Brown helped coerce a false confession from Bivens, but they admitted that they do not know the specific officers involved. Therefore, their allegations against Brown are inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

5.    *Count V*

Brown argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. Plaintiffs alleged that Brown helped beat, threaten, and otherwise coerce a false confession from Ruffin. Plaintiffs also alleged that Brown helped provide Ruffin with nonpublic facts to enhance the false confession, and that Brown continued to coerce false inculpatory statements from Ruffin after the initial confession. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment substantive due process rights.

6.    *Count VI*

Brown argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Dixon's right to substantive due process under the Fourteenth Amendment. Plaintiffs alleged that Brown repeatedly beat Dixon and coerced his false confession. They also alleged that he later bragged about it to Defendant Walters in the presence of trustees. These allegations are sufficient to state a claim for the deprivation of Dixon's Fourteenth Amendment substantive due process rights.

7.    *Count VII*

Brown argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to substantive due process under the Fourteenth Amendment. Plaintiffs alleged, "upon information and belief," that Brown helped coerce a false confession from Bivens, but they admitted that they do not know the specific officers involved. Therefore, their allegations against Brown are inherently

49

speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

        8.     *Count VIII*

Brown argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that Brown helped beat, threaten, and otherwise coerce a false confession from Ruffin. Plaintiffs also alleged that Brown helped provide Ruffin with nonpublic facts to enhance the false confession, and that Brown continued to coerce false inculpatory statements from Ruffin after the initial confession. Finally, Plaintiffs alleged that Brown repeatedly beat Dixon and coerced his false confession. These allegations are sufficient to state a claim against Brown for the deprivation of Dixon and Ruffin's Fourth and Fourteenth Amendment right to be free from detention pursuant to the wrongful institution of legal process, and the Court rejects the argument that these claims are time-barred, for the same reasons provided above.

However, while Plaintiffs alleged, "upon information and belief," that Brown helped coerce a false confession from Bivens, they admitted that they do not know the specific officers involved. Therefore, their allegations against Brown as to Bivens are inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

9.     *Count IX*

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

10.     *Count X*

Brown argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged Brown's presence and participation in the coercive interrogations of Ruffin and Dixon. That is sufficient to state a plausible claim that Brown and other officers violated Dixon and Ruffin's constitutional rights, that Brown had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647. However, Plaintiffs admitted that they do not know whether Brown was involved in the actions committed against Bivens. Therefore, while Plaintiffs sufficiently stated a bystander liability claim against Brown as it relates to Ruffin and Dixon, they failed to state such a claim against him as it relates to Bivens.

11.     *Count XI*

Brown argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that Brown was a member of the task force and, therefore, participated in its meetings, shared information with the other investigators, and coordinated investigation efforts. Plaintiffs also alleged that Brown helped beat,

threaten, and otherwise coerce a false confession from Ruffin. They alleged that he helped provide Ruffin with nonpublic facts to enhance the false confession, and that he continued to coerce false inculpatory statements from Ruffin after the initial confession. Finally, they alleged that Brown repeatedly beat Dixon and helped coerce his confession.

Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Defendant Brown's actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently pleaded a Section 1983 conspiracy claim as to Defendant Brown.

### 12.   *Count XII*

Brown argues that Plaintiffs failed to state a conspiracy claim under Section 1985. For the reasons provided above, the Court finds that Plaintiffs pleaded sufficient facts to state conspiracy claims under Sections 1985(2) and 1985(3).

### 13.   *Count XV*

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

### 14.   *Summary*

For these reasons, the Court grants Defendant Brown's Motion to Dismiss [102]

52

as to Count IV, Count VII, Count VIII as it relates to Bivens, Count IX, and Count X as it relates to Bivens. The Court denies the motion as to Count I, Count II, Count III, Count V, Count VI, Count VIII as it relates to Ruffin and Dixon, Count X as it relates to Ruffin and Dixon, Count XI, Count XII, and Count XV.

### F.   Wayne R. Taylor [105]

On July 1, 2014, counsel filed a Suggestion of Death [142] for Defendant Wayne R. Taylor, representing that he died on June 12, 2014. No party has filed a motion for substitution of his estate or representative. Rule 25 provides: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting death, the action by or against the decedent must be dismissed." FED. R. CIV. P. 25(a)(1).

On March 10, 2015, the Court entered an Order to Show Cause [187], requiring Plaintiffs to show cause why their claims against Taylor in his individual capacity should not be dismissed without prejudice. Plaintiffs responded [188], and they agreed that the claims against Taylor in his individual capacity should be dismissed without prejudice. Therefore, pursuant to Rule 25, Plaintiff's claims against Defendant Wayne R. Taylor in his individual capacity are dismissed without prejudice. Accordingly, Taylor's Motion to Dismiss [105] is denied as moot.

### G.   Jim Erwin [107]

####     1.    Count I

Erwin argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that Erwin helped beat additional false incriminating statements from Ruffin after the task force had already coerced his initial confession. This allegation is sufficient to state a plausible claim that Erwin violated Ruffin's Fifth Amendment rights.

      2.     *Count II*

Erwin argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. As already noted, Plaintiffs alleged that Erwin participated in beating false incriminating statements from Ruffin. This allegation is sufficient to state a plausible claim that Erwin violated Ruffin's Fourteenth Amendment due process rights.

      3.     *Count III*

Defendant Erwin argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment due process rights. Plaintiffs admitted that they do not know the specific officers involved in the actions committed against Dixon, *see Steury*, 735 F.3d at 204, and they did not allege Erwin's involvement in any of the actions committed against Dixon. Therefore, they failed to state a claim against Erwin for the deprivation of Dixon's Fifth Amendment rights.

      4.     *Count IV*

Erwin argues that Plaintiffs provided insufficient detail regarding his

54

involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process.

Plaintiffs did not allege Erwin's involvement in any of the actions committed against Bivens, and they admitted that they do not know who was involved in those actions. Therefore, Plaintiffs failed to state a claim against Erwin in Count IV. *Steury*, 735 F.3d at 204.

### 5.    *Count V*

Erwin argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. Plaintiffs specifically alleged that Erwin helped beat false incriminating statements from Ruffin. This allegation is sufficient to state a claim for the alleged violation of Ruffin's Fourteenth Amendment substantive due process rights.

### 6.    *Count VI*

Erwin argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Dixon's Fourteenth Amendment substantive due process rights. Plaintiffs did not allege Erwin's involvement in any of the actions committed against Dixon, and they admitted they do know the specific officers involved in those actions. Therefore, they failed to state claim against Erwin in Count VI. *Steury*, 735 F.3d at 204.

### 7.    *Count VII*

Erwin argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to substantive due process under the Fourteenth

Amendment. As noted above, Plaintiffs failed to allege that Erwin was involved in the actions committed against Bivens, and they admitted that they do not know who was actually involved in those actions. Therefore, Plaintiffs failed to state a claim against Erwin in Count VII. *Steury*, 735 F.3d at 204.

       *8.*     *Count VIII*

Erwin argues that Plaintiffs provided insufficient detail regarding his alleged involvement in the deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that Defendant Erwin helped beat false incriminating statements from Ruffin. Therefore, they adequately pleaded a Section 1983 claim for the deprivation of the Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process against Erwin, as it relates to Ruffin. The Court rejects Erwin's argument that this claim is time-barred, for the same reasons provided above.

However, Plaintiffs pleaded no facts indicating Erwin's involvement in the actions committed against Dixon and Bivens, and they admitted that they do not know who was involved in those actions. Therefore, Plaintiffs failed to state a claim against Erwin in Count VII as it relates to Dixon and Bivens.

       *9.*     *Count IX*

For the same reasons provided above, the Court finds that Plaintiffs failed to

state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

          10.     *Count X*

Erwin argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged Defendant Erwin's participation in the coercive interrogation of Ruffin. This is sufficient to state a plausible claim that Erwin and other officers violated Ruffin's constitutional rights, that Erwin had an opportunity to intervene, but that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647.

However, Plaintiffs did not allege Erwin's involvement in the actions committed against Dixon and Bivens, and they admitted that they do not know who was involved in those actions. Therefore, while Plaintiffs sufficiently stated a bystander liability claim against Erwin as to Ruffin, they failed to state such a claim against him as to Dixon and Bivens.

          11.     *Count XI*

Erwin argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that Erwin, a guard at the Forrest County Jail Complex, assisted the task force and met with them to discuss strategy, share information, and coordinate the investigation. They also alleged that Erwin helped beat statements from Ruffin after the task force had already coerced his initial false confession. Plaintiffs'

allegations suggest a "preceding agreement" among the Defendants. *Jabary*, 547 F. App'x at 610. Moreover, Plaintiffs alleged specific facts indicating that Erwin participated in the task force and committed actions committed in furtherance of its efforts. Therefore, Plaintiffs sufficiently stated a Section 1983 conspiracy claim against Defendant Erwin.

### 12.   *Count XII*

Erwin also argues that Plaintiffs failed to state a claim under Section 1985. For the same reasons provided above, the Court finds that Plaintiffs sufficiently stated a conspiracy claim against Defendant Erwin under Sections 1985(2) and 1985(3).

### 13.   *Count XV*

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

### 14.   *Summary*

For these reasons, the Court grants Defendant Erwin's Motion to Dismiss [107] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

## H.   *Estate of R. E. "Eddie" Clark [119]*

### 1.   *Count I*

Clark argues that Plaintiffs provided insufficient detail regarding his

involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that Clark participated in beating and threatening a false confession from Ruffin. They specifically alleged that Clark threatened Ruffin with a gun. Plaintiffs also alleged that Clark helped fabricate Ruffin's false confession by providing him nonpublic facts about the crime, and that he misrepresented to prosecutors that the false confession had originated with Ruffin. Finally, Clark allegedly continued to coerce incriminating statements from Ruffin after his initial confession. These allegations are sufficient to state a claim for the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination.

2.      *Count II*

Clark also argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. Plaintiffs specifically alleged that Clark left work to visit his aunt, Andy DeFatta's mother. Clark allegedly spoke with DeFatta, brought him to the Sheriff's Department, manipulated him into providing a false statement against Ruffin, and provided him with nonpublic facts to enhance the false statement. Plaintiffs further alleged that Clark helped beat and threaten a false confession from Ruffin. They specifically alleged that Clark threatened Ruffin with a gun. Plaintiffs also alleged that Clark helped fabricate Ruffin's false confession by providing him nonpublic facts about the crime, and that he misrepresented to prosecutors that the false confession had originated with Ruffin. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment due process rights.

59

### 3.     Count III

Clark argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs admitted that they do not know the specific officers involved in the actions committed against Dixon. Therefore, their allegation that Clark helped coerce a false confession from Dixon is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

### 4.     Count IV

Clark argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged, upon information and belief, that Clark helped coerce a false confession from Bivens by threatening him. However, they also admitted that they do not know whether Clark was involved in the actions committed against Bivens. Therefore, Plaintiffs' allegations against Clark related to Count IV are insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

### 5.     Count V

Clark argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. Plaintiffs specifically alleged that Clark helped beat and threaten a false confession from Ruffin, that he threatened Ruffin with a gun, that he helped fabricate

Ruffin's false confession by providing nonpublic facts about the crime, that he misrepresented to prosecutors that the false confession had originated with Ruffin, and that he continued to coerce incriminating statements from Ruffin after the initial confession. These allegations are sufficient to state a claim against Clark for the deprivation of Ruffin's Fourteenth Amendment substantive due process rights.

### 6.   *Count VI*

Clark argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Dixon's Fourteenth Amendment substantive due process rights. Plaintiffs admitted that they do not know the specific officers involved in the actions committed against Dixon. Therefore, their allegation that Clark helped coerce a false confession from Dixon is inherently speculative and insufficient to pass Rule 12(b)(6) scrutiny. *Steury*, 735 F.3d at 204.

### 7.   *Count VII*

Clark argues that Plaintiffs did not provide sufficient detail regarding the alleged deprivation of Bivens' right to substantive due process under the Fourteenth Amendment. As noted above, Plaintiffs admitted that they do not know who was involved in the actions committed against Bivens. Therefore, they failed to state a claim against Clark for the deprivation of Bivens' Fourteenth Amendment substantive due process rights.

### 8.   *Count VIII*

Clark argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of their Fourth and Fourteenth Amendment

right to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that Defendant Clark helped beat and threaten false incriminating statements from Ruffin. Therefore, they adequately pleaded a Section 1983 claim for the deprivation of their Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process against Clark with respect to Ruffin. The Court also rejects Defendant Clark's argument that this claim is time-barred, for the same reasons provided above.

However, Plaintiffs admitted that they do not know who was involved in the alleged deprivation of Bivens and Dixon's constitutional rights. Therefore, they failed to state a claim against Clark for the deprivation of Bivens and Dixon's Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process.

*9.    Count IX*

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

*10.    Count X*

Clark argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged Defendant Clark's participation in the coercive interrogation of Ruffin. This is

sufficient to make out a plausible claim that Clark and other officers violated Ruffin's constitutional rights, that Clark had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647. However, Plaintiffs admitted that they do not know who was involved in the actions committed against Dixon and Bivens. Therefore, while Plaintiffs sufficiently stated a bystander liability claim against Clark as to Ruffin, they failed to state such a claim as to Dixon and Bivens.

  11. *Count XI*

  Clark argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that Clark was a member of the task force and, therefore, participated in the planning and coordination of the investigation. Plaintiffs specifically alleged that Clark facilitated the false statement by Andy DeFatta which implicated Ruffin. Furthermore, Plaintiffs alleged that Clark helped beat and threaten false confessions from Ruffin and Dixon.

  Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Defendant Clark's actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently

pleaded a Section 1983 conspiracy claim as to Defendant Clark.

     *12.    Count XII*

Clark also argues that Plaintiffs failed to state a conspiracy claim under Section 1985. For the same reasons provided above, the Court finds that Plaintiffs pleaded sufficient facts to state a conspiracy claim against Defendant Clark under Sections 1985(2) and 1985(3).

     *13.    Count XV*

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

     *14.    Summary*

For these reasons, the Court grants Defendant Clark's Motion to Dismiss [119] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

## I.    *Estate of Earnest "Arlon" Moulds [129]*

     *1.    Release of Claims*

First, Defendant Moulds argues that Plaintiffs' claims are "barred by the terms and conditions of the various contractual releases executed in connection with the settlement reached with the State of Mississippi."

The relevant statute provides: "Any claimant who receives compensation under

this chapter shall sign a release from all claims against the state regarding the incarceration for which the claimant receives compensation." MISS. CODE ANN. § 11-44-15. However, Defendant Moulds failed to provide any evidence that Plaintiffs executed such a release, much less a copy of it for the Court's examination. Regardless, Defendants' motions invoked Rule 12(b)(6), and, therefore, the Court's analysis is confined to Plaintiffs' pleadings, any documents attached thereto, and any judicially noticed facts. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).

### 2. *Prosecutorial Immunity*

Next, Defendant Moulds argues that he enjoys prosecutorial immunity from any of Plaintiffs' claims arising from his "participation . . . as an advocate on behalf of the State of Mississippi, . . . including, but not limited to, [his] participation in all trial and pretrial proceedings and preparation for same by the Office of the District Attorney."

Prosecutorial immunity is an affirmative defense, and Defendant Moulds "bears the burden of proving that the conduct at issue served a prosecutorial function." *Hoog-Watson v. Guadalupe County*, 591 F.3d 431, 437 n. 6 (5th Cir. 2009).

> [P]rosecutorial immunity extends to conduct that is intimately associated with the judicial phase of the criminal process, but not to those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. In other words, prosecutorial immunity protects the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, but not the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.

*Id.* at 438 (punctuation and citations omitted).

65

Construed in Plaintiffs' favor, the factual allegations of the Second Amended Complaint [61] and Rule 7(a) Reply [165] are sufficient to create an issue of material fact as to whether Defendant Moulds' actions fall outside the scope of prosecutorial immunity. As prosecutorial immunity is an affirmative defense, rather than a pleading requirement, the issue should be resolved through discovery and summary judgment or trial. *See Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).

     *3.    Count I*

Moulds argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that Moulds participated in beating and threatening a false confession from Ruffin. They also alleged that Moulds helped fabricate the false confession by providing Ruffin with nonpublic facts about the crime, and that he misrepresented to prosecutors that the false confession had originated with Ruffin. These allegations are sufficient to state a claim for the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination.

     *4.    Count II*

Moulds  also argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. Plaintiffs specifically alleged that Moulds manipulated Andy DeFatta and Cris Williams into providing false statements implicating Ruffin, provided them with nonpublic facts about the crime to enhance the statements, and signed the statements as a witness. Plaintiffs also alleged that Moulds arrested Ruffin and brought him to the

station, where Moulds helped beat, threaten, and otherwise coerce Ruffin into providing a false confession written by Moulds. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment due process rights.

     *5.    Count III*

Moulds argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs specifically alleged that Defendant Moulds took Dixon's videotaped false confession. This allegation is sufficient to state claim against Moulds for participation in the deprivation of Dixon's Fifth and Fourteenth Amendment rights.

     *6.    Count IV*

Moulds argues that Plaintiffs provided insufficient factual detail regarding his involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs specifically alleged that Defendant Moulds took Bivens' videotaped false confession. This allegation is sufficient to state a claim against Moulds for participation in the deprivation of Bivens' Fifth and Fourteenth Amendment rights.

     *7.    Count V*

Moulds argues that Plaintiffs alleged insufficient specific facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. As previously noted, Plaintiffs alleged that Moulds manipulated Andy DeFatta and Cris Williams into providing false statements implicating Ruffin,

provided them with nonpublic facts about the crime to enhance the statements, and signed the statements as a witness. Plaintiffs also alleged that Moulds arrested Ruffin and brought him to the station, where Moulds helped beat, threaten, and otherwise coerce Ruffin into providing a false confession written by Moulds. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment substantive due process rights.

> 8.    *Count VI*

Moulds argues that Plaintiffs alleged insufficient specific facts related to his involvement in the alleged deprivation of Dixon's Fourteenth Amendment substantive due process rights.  Plaintiffs specifically alleged that Defendant Moulds took Dixon's videotaped false confession. This allegation is sufficient to state a claim against Moulds for participation in the deprivation of Dixon's Fourteenth Amendment substantive due process rights.

> 9.    *Count VII*

Moulds argues that Plaintiffs alleged insufficient specific facts related to his involvement in the alleged deprivation of Bivens' Fourteenth Amendment substantive due process rights. Plaintiffs specifically alleged that Defendant Moulds took Bivens' videotaped false confession. This allegation is sufficient to state claim against Moulds for participation in the deprivation of Bivens' Fourteenth Amendment substantive due process rights.

> 10.    *Count VIII*

Moulds argues that Plaintiffs provided insufficient factual detail regarding his

alleged involvement in the deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process. Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that Defendant Moulds helped beat and threaten false incriminating statements from Ruffin, and that he wrote Ruffin's false confession. Plaintiffs also alleged that Moulds took Bivens and Dixon's videotaped false confessions. These allegations are sufficient to state a Section 1983 claim for the deprivation of Plaintiffs' Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process. The Court also rejects Defendant Moulds' argument that this claim is time-barred, for the same reasons provided above.

### 11.    Count IX

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

### 12.    Count X

Moulds argues that Plaintiffs alleged insufficient specific facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged that Defendant Moulds helped beat and threaten false incriminating statements from Ruffin, and that he wrote Ruffin's false confession. Plaintiffs also alleged that Moulds took Bivens and Dixon's videotaped false

confessions. This is sufficient to make out a plausible claim that Moulds and other officers violated Ruffin's constitutional rights, that Moulds had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647.

### 13.   Count XI

Moulds argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights.

Plaintiffs specifically alleged that Moulds was the head of the task force and led the investigation. He allegedly directed and supervised all of its activities, and all officers submitted their investigative reports to him. Moulds also participated in the task force's strategy meetings and assigned tasks throughout the investigation.

Moulds allegedly manipulated Andy DeFatta and Cris Williams into giving false statements implicating Ruffin, which he then signed as a witness. Moulds arrested Ruffin and helped beat, threaten, and otherwise coerce him into providing a false confession written by Moulds which included nonpublic facts to enhance its credibility. Moulds allegedly signed the false statement as a witness. Finally, Plaintiffs alleged that Moulds took Bivens and Dixon's videotaped false confessions.

Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific factual allegations regarding a coordinated group effort to deprive them of their constitutional rights. Moreover, as

discussed above, Plaintiffs provided specific allegations regarding Defendant Moulds'
actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently
pleaded a Section 1983 conspiracy claim as to Defendant Moulds.

14.    *Count XII*

Moulds argues that Plaintiffs failed to state a conspiracy claim under Section
1985. For the same reasons provided above, the Court finds that Plaintiffs pleaded
sufficient facts to state a conspiracy claim against Moulds under Sections 1985(2) and
1985(3).

15.    *Count XIV*

Defendant Moulds argues that Plaintiffs failed to allege sufficient facts in
support of their claim that he and the other supervisory Defendants failed to
adequately supervise, train, or discipline their subordinate officers.

As noted above, "[t]o establish § 1983 liability against supervisors, the plaintiff
must show that: (1) the [supervisor] failed to supervise or train the officer; (2) a causal
connection existed between the failure to supervise or train and the violation of the
plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate
indifference to the plaintiff's constitutional rights." *Roberts*, 397 F.3d at 292.

"[T]he misconduct of a subordinate must be conclusively linked to the action or
inaction of the supervisor," and the deliberate indifference standard is a "stringent"
one, requiring that "the supervisory actor disregarded a known consequence of his
action." *Zarnow*, 614 F.3d at 169-70. "To establish deliberate indifference, a plaintiff
usually must demonstrate a pattern of violations and that the inadequacy of the

71

training is obvious and obviously likely to result in a constitutional violation." *Goodman*, 571 F.3d at 395. "Furthermore, for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform," and the "plaintiff must allege with specificity how a particular training program is defective." *Id.*

Plaintiffs alleged no specific facts concerning Defendants' training programs. Therefore, they failed to "allege with specificity how a particular training program [was] defective" and failed to state a claim under Section 1983 for the supervisory Defendants' alleged failure to train their subordinates. *Id.*

However, Plaintiffs specifically alleged that Moulds was the head of the task force and led the investigation. He allegedly directed and supervised all of its activities, and all officers submitted their investigative reports to him. Moulds also participated in the task force's strategy meetings and assigned tasks throughout the investigation. Plaintiffs also alleged that Moulds directed the task force to not follow up on the list of possible suspects generated by the victim's husband. Rather, he directed the task force to focus on the residents of the Hattiesburg Restitution Center. Moulds also allegedly helped orchestrate the manipulation of DeFatta and Williams into giving false statements against Ruffin. Plaintiffs further alleged that Moulds helped beat and threaten a confession from Ruffin, and that he took the videotaped false confessions from Dixon and Bivens.

These allegations are sufficient to demonstrate that Moulds failed to supervise his subordinates while they were engaged in the subject acts, that a causal connection

exists between his failure to supervise and the alleged deprivations, and that his failure to supervise constituted deliberate indifference to Plaintiffs' constitutional rights. *See Wernecke*, 591 F.3d at 401 (supervisory official liable under Section 1983 if he affirmatively participates in the constitutional deprivation).

### 16.    Count XV

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

### 17.    Summary

For these reasons, the Court grants Moulds' Motion to Dismiss [129] as to Count IX and Count XIV as it relates to Defendants' failure to train, but the Court denies it as to Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count X, Count XI, Count XII, Count XIV as it relates to Defendants' failure to supervise, and Count XV.

## J.    *Estate of Larry James [147]*

### 1.    Count I

Defendant James argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination. Plaintiffs alleged that James helped coerce Ruffin's false confession by threatening to kill him, and that James drove Ruffin out into the woods to scare him. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fifth Amendment right to be free from self-incrimination.

73

2.    *Count II*

James also argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment due process rights. Plaintiffs alleged that James helped coerce Ruffin's false confession by threatening to kill him, and that James drove Ruffin out into the woods to scare him. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment due process rights.

3.    *Count III*

James argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Dixon's Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged no facts connecting James to the actions committed against Dixon. Therefore, they failed to state a claim against James for the deprivation of Dixon's Fifth and Fourteenth Amendment rights.

4.    *Count IV*

James argues that Plaintiffs provided insufficient detail regarding his involvement in the alleged deprivation of Bivens' Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process. Plaintiffs alleged no facts connecting James to the actions committed against Bivens. Therefore, they failed to state a claim against James for the deprivation of Bivens' Fifth and Fourteenth Amendment rights.

5.    *Count V*

James argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Ruffin's Fourteenth Amendment substantive due process rights. As previously noted, Plaintiffs alleged that James helped coerce Ruffin's false confession by threatening to kill him, and that James drove Ruffin out into the woods to scare him. These allegations are sufficient to state a claim for the deprivation of Ruffin's Fourteenth Amendment substantive due process rights.

6. *Count VI*

James argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Dixon's Fourteenth Amendment substantive due process rights. Plaintiffs alleged no facts connecting James to the actions committed against Dixon. Therefore, they failed to state a claim against James for the deprivation of Dixon's Fourteenth Amendment substantive due process rights.

7. *Count VII*

James argues that Plaintiffs alleged insufficient facts related to his involvement in the alleged deprivation of Bivens' Fourteenth Amendment substantive due process rights. Plaintiffs alleged no facts connecting James to the actions committed against Bivens. Therefore, they failed to state a claim against James for the deprivation of Bivens' Fourteenth Amendment substantive due process rights.

8. *Count VIII*

James argues that Plaintiffs provided insufficient detail regarding his alleged involvement in the deprivation of their Fourth and Fourteenth Amendment rights to be free from detention pursuant to the wrongful institution of legal process.

Specifically, he contends that Plaintiffs failed to allege any specific facts showing his involvement in the arrests of Ruffin, Bivens, or Dixon.

As noted above, Plaintiffs specifically alleged that James helped coerce Ruffin's false confession by threatening to kill him, and that James drove Ruffin out into the woods to scare him. These allegations are sufficient to state a Section 1983 claim for the deprivation of Ruffin's Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process. The Court also rejects Defendant James' argument that this claim is time-barred, for the same reasons provided above.

However, Plaintiffs failed to allege any facts connecting James to the actions committed against Bivens and Dixon. Therefore, they failed to state a claim against James for the deprivation of Bivens and Dixon's Fourth and Fourteenth Amendment right to freedom from detention pursuant to the wrongful institution of legal process.

### 9.   Count IX

For the same reasons provided above, the Court finds that Plaintiffs failed to state a claim for the violation of their First Amendment right of access to the courts or Fourteenth Amendment right of access to the clemency process.

### 10.   Count X

James argues that Plaintiffs alleged insufficient facts in support of their bystander liability, or failure-to-intervene, claim. As noted above, Plaintiffs specifically alleged that Defendant James participated in the coercion of a false confession from Ruffin by threatening to kill him. This allegation, in combination with the rest of

Plaintiffs' allegations, is sufficient to make out a plausible claim that James and other officers violated Ruffin's constitutional rights, that James had an opportunity to intervene, and that he chose not to do so. *Whitley*, 726 F.3d at 646. At the very least, these allegations demonstrate that he "acquiesced in the alleged constitutional violation." *Id.* at 647.

However, Plaintiffs alleged no facts indicating James' participation in the actions committed against Bivens and Dixon, or his presence during those alleged actions. Accordingly, they failed to state a bystander liability claim against James as it relates to Bivens and Dixon.

### 11.   Count XI

James argues that Plaintiffs alleged insufficient facts demonstrating that he participated in a conspiracy to deprive them of their constitutional rights. Plaintiffs specifically alleged that James assisted the task force, met with it, took direction from it, and shared information with it. Plaintiffs also alleged that James helped coerce a false confession from Ruffin by threatening to kill him.

Plaintiffs' allegations suggest a "preceding agreement" among the individual Defendants. *Jabary*, 547 F. App'x at 610. Plaintiffs did not rely on bald allegations or conclusory statements. They provided specific facts about a coordinated group effort to deprive them of their constitutional rights. Moreover, as discussed above, Plaintiffs provided specific allegations regarding Defendant James' actions in furtherance of the alleged conspiracy. Therefore, Plaintiffs sufficiently pleaded a Section 1983 conspiracy claim as to Defendant James.

77

Case 2:13-cv-00008-KS-MTP   Document 189   Filed 03/30/15   Page 78 of 81

*12.    Count XII*

James also argues that Plaintiffs failed to state a conspiracy claim under Section 1985. For the same reasons provided above, the Court finds that Plaintiffs pleaded sufficient facts to state a conspiracy claim against Defendant James under Sections 1985(2) and 1985(3).

*13.    Count XV*

For the same reasons provided above, the Court finds that there was a clearly established right to familial association at the time of the subject events, and that Plaintiffs' familial association claim is not time-barred.

*14.    Summary*

For these reasons, the Court grants Defendant James' Motion to Dismiss [147] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

## K.    *Gene Walters*

On May 28, 2014, counsel filed a Suggestion of Death [118] for Defendant Gene Walters, representing that he died on May 26, 2014. No party has filed a motion for substitution of his estate or representative. Rule 25 provides: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement

78

noting death, the action by or against the decedent must be dismissed." FED. R. CIV. P. 25(a)(1).

On March 10, 2015, the Court entered an Order to Show Cause [187], requiring Plaintiffs to show cause why their claims against Walters in his individual capacity should not be dismissed without prejudice. Plaintiffs responded [188], and they agreed that the claims against Walters in his individual capactiy should be dismissed without prejudice. Therefore, pursuant to Rule 25, Plaintiff's claims against Defendant Gene Walters in his individual capacity are dismissed without prejudice.

## IV. CONCLUSION

For the reasons provided above, the Court **grants in part and denies in part** the Motions to Dismiss [94, 97, 99, 102, 107, 119, 129, 147] filed by Defendants Terry Martin, Herbert Hart, Joe Hopstein, Henry "Red" Brown, Jim Erwin, the Estate of R. E. "Eddie" Clark, the Estate of Earnest "Arlon" Moulds, and the Estate of Larry James. Specifically:

- The Court grants Defendant Terry Martin's Motion to Dismiss [94] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Plaintiffs Dixon and Bivens, Count IX, and Count X as it relates to Plaintiffs Dixon and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Plaintiff Ruffin, Count X as it relates to Plaintiff Ruffin, Count XI, Count XII, and Count XV.

- The Court grants Defendant Hart's Motion to Dismiss [97] as to Count III, Count VI, Count VIII as it relates to Dixon, Count IX, Count X as it relates to Dixon, and Count XIII as it relates to Hart's alleged failure to train his subordinates. The Court denies the motion as to Count I, Count II, Count IV, Count V, Count VII, Count VIII as it relates to Ruffin and Bivens, Count X as it relates to Ruffin and Bivens, Count XI, Count XII, Count XIII as it relates

79

to Hart's alleged failure to supervise his subordinates, and Count XV.

- The Court grants Defendant Hopstein's Motion to Dismiss [99] as to Count IX and Count XIII as it concerns Hopstein's alleged failure to train his subordinates. The Court denies the motion as to Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count X, Count XI, Count XII, Count XIII as it concerns Hopstein's alleged failure to supervise his subordinates, and Count XV.

- The Court grants Defendant Brown's Motion to Dismiss [102] as to Count IV, Count VII, Count VIII as it relates to Bivens, Count IX, and Count X as it relates to Bivens. The Court denies the motion as to Count I, Count II, Count III, Count V, Count VI, Count VIII as it relates to Dixon and Ruffin, Count X as it relates to Dixon and Ruffin, Count XI, Count XII, and Count XV.

- The Court grants Defendant Erwin's Motion to Dismiss [107] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon and Bivens. The Court denies Defendant Erwin's motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

- The Court grants Defendant Clark's Motion to Dismiss [119] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

- The Court grants Defendant Moulds' Motion to Dismiss [129] as to Count IX and Count XIV as it relates to Defendants' failure to train. The Court denies the motion as to Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count X, Count XI, Count XII, Count XIV as it relates to Defendants' failure to supervise, and Count XV.

- The Court grants Defendant James' Motion to Dismiss [147] as to Count III, Count IV, Count VI, Count VII, Count VIII as it relates to Dixon and Bivens, Count IX, and Count X as it relates to Dixon

80

and Bivens. The Court denies the motion as to Count I, Count II, Count V, Count VIII as it relates to Ruffin, Count X as it relates to Ruffin, Count XI, Count XII, and Count XV.

The Court also **dismisses without prejudice** Plaintiffs' claims against Defendant Wayne R. Taylor in his individual capacity and **denies** his Motion to Dismiss [105] **as moot**. Finally, the Court **dismisses without prejudice** Plaintiffs' claims against Defendant Gene Walters in his individual capacity.

The parties shall, within one week of the entry of this order, contact the chambers of Magistrate Judge Michael Parker to schedule a case management conference.

SO ORDERED AND ADJUDGED this 30th day of March, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE